## In re PETERS.

(Supreme Court, Special Term, Erie County. Aug. 29, 1908.)

1. ELECTIONS—CONSTRUCTION OF STATUTES.

A statute which restricts or impairs the right of an elector in the exercise of the elective franchise is to be strictly construed in favor of the elector, and in such manner as to secure him, if possible, the right of suffrage.

2. SAME—PRIMARY ELECTIONS—BALLOTS—CONTENTS—STATUTORY PROVISIONS.

Primary Election Law, Laws 1898, p. 343, c. 179, § 6, directs the custodian of the primary records to prescribe the size, color, weight, and texture of the paper to be used for the ballots, and prescribes that each ballot shall have printed or written on its face the party name, the assembly district, or ward number, if any, the election district number when the election district is a unit of representation, the names of positions to be filled, and the names of the persons voted for to fill the positions, and provides that, if a ballot does not conform to the sample ballot prescribed for use, it shall not be counted. *Held*, that ballots conforming to all the express requirements of the section were not void because they bore on their face the imprint of the "Union Label"; the purpose of the section to preserve the secrecy of the ballot, when properly folded, not being defeated thereby.

Application by Frank Peters for a review of the acts of the Democratic board of primary inspectors of the first election district of the Ninth Ward of the city of Buffalo in rejecting certain ballots. Board ordered to reconvene and recanvass the vote, counting the rejected ballots.

Thomas C. Burke, for petitioner.
John T. Ryan, opposed.

WHEELER, J. The petitioner seeks for a summary review of the proceedings of the Democratic board of primary election inspectors for the Ninth Ward of the city of Buffalo, held on the 25th day of August, 1908. It appears from the evidence before me that at this election rival tickets were in the field and 133 ballots cast in all. All the ballots cast seem to have complied with the sample ballot prescribed by the custodian of primary records as to size, color, weight, and texture of the paper to be used, as required by section 6 of the primary election law (Laws 1898, p. 343, c. 179). Twenty-six of the ballots cast, however, had printed on the face and inside of the ballots, at the bottom of the ballot and following the names of the candidates voted for, the imprint of the "Union Label," such as is ordinarily used to designate articles manufactured by or work done by union labor. The board of inspectors rejected these 26 ballots as void, refused to count them, and returned the ballots in question to the custodian of primary records, inclosed in an envelope, as directed by the primary election law. The ballots were not indorsed on the back as directed by the statute by writing stating the reasons for their rejection, but in disposing of the questions involved we shall disregard their neglect to comply with the directions of the statute, and consider simply the question whether the ballots were properly rejected.

The primary election law provides in section 6 that, if the ballot does not conform to the sample ballot prescribed for use, it "shall not be counted at any official primary election." Section 8 of the same act provides that:

"When a ballot is not void and a primary election inspector or a duly authorized watcher shall, during the canvass of the vote, declare his belief that any particular ballot has been written upon or marked in any way for the purpose of identification, the inspectors shall write on the back of such ballot: 'Objected to because marked for identification.' * * * The votes upon each such ballot shall be counted by them as if not so objected to."

It does not appear that any objection was raised by any one to the 26 ballots in question as marked for identification, but they appear to have been rejected and not counted as void simply and solely for the reason that they had imprinted on their face the "Union Label."

The sole question, therefore, for our determination is whether or not the presence of this imprint renders the ballot void; for no question is raised as to the ballots in all other respects complying with the law. Section 6 of the primary law directs the custodian of the primary records to prescribe "the size, color, weight and texture of the paper to be used for the ballots." It then declares that:

"Each ballot shall have printed or written upon its face the party name, the assembly district or ward number, if any, the election district number when the election district is a unit of representation, the names of the positions to be filled and the names of the persons voted for to fill such positions."

It is to be noted the 26 ballots contained all these things, but, in addition, the "Union Label" imprint. The same section declares that:

"Ballots not conforming to the provisions of this section shall not be counted at any official primary election."

The act does not in terms forbid the printing of additional matter or emblems on the ballot. In fact, the law contemplates that additional marks may intentionally or by accident appear, but such marks do not vitiate a ballot, unless placed on the ballot "for the purpose of identification." Matter of McDade, 43 App. Div. 314, 60 N. Y. Supp. 333; Matter of Crowforth, 58 Misc. Rep. 614, 109 N. Y. Supp. 1003.

No such claim is made in this case, and the only question is whether the presence of marks like the "Union Label" imprint renders the ballot void as one not conforming to the requirements of the provisions of section 6 of the act. The 26 ballots conformed as to size, color, weight, and texture of the paper, and had all the printed matter required by the section, but, in addition, the "Union Label" imprint, which, so far as this proceeding is concerned, we must assume was not placed on it for any purposes of identification; for the board of inspectors in rejecting the ballots proceeded upon no such theory, and do not now claim they were rejected for the reason of being "marked for identification." In determining the question, therefore, whether the "Union Label" imprint vitiated the ballots, we must determine that a question in the light of the well-settled principle of law that a statute which restricts or impairs the right of an elector in the exercise of the election franchise is to be strictly construed in favor of the elector, and in such manner as to secure him, if possible, the right of

suffrage. Matter of McDade, 43 App. Div. 314, 60 N. Y. Supp. 333. The direct purpose and object of the law in directing the custodian of primary records to prescribe the size, color, weight, and texture of the ballot were to preserve the secrecy· of the ballot, so that, when the voter presented his ballot to the inspectors properly folded, neither they nor bystanders would know for which set of candidates the elector was voting. The mere addition of the "Union Label" imprint defeated none of these salutary provisions of the election law. Its presence violated no express provisions of the act, and to hold the ballots in dispute void would defeat the expressed wishes of a majority of the democratic voters of the district. We think an amendment to the statute might be properly made prohibiting the use of any emblem whatever. But the statute as it now stands does not forbid their use, and, in view of the principles of law which control cases of this kind, we reach the conclusion that the board of inspectors erred in rejecting the ballots in question, and that they should reconvene and recanvass the vote accordingly.

So ordered.